CLERK'S OFFICE
U.S. DISTRICT COURT
AT ROANOKE, VA
FILED
April 09, 2025
LAURA A. AUSTIN, CLERK
BY: s/ M.Poff, Deputy Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | | |
|---|---|---|---|
| JOHN HUNTER ALEXANDER, | ) | Civil Action No. 7:22-cv-00488 | |
|     Plaintiff, | ) | | |
| | ) | | |
| v. | ) | | |
| | ) | | |
| TIMOTHY TRENT, *et al.*, | ) | By: | Hon. Robert S. Ballou |
|     Defendants. | ) | | United States District Judge |

## MEMORANDUM OPINION

John Hunter Alexander, a Virginia inmate proceeding *pro se*, filed a civil rights action under 42 U.S.C. § 1983. He asserts claims against eight Defendants —Timothy Trent, Chad Lipscomb, Major Schmitt, Nurse Kimberly Rodgers, Officer Frederick Harden, Corporal Heather Harper, Officer Patricia Ferguson, and Officer Sarah Horsley.[1] On October 16, 2023, Defendants filed their second motion for summary judgment. Dkts. 85; 86. Finding no genuine dispute of material fact, Defendants' motion is **GRANTED** and Alexander's claims are **DISMISSED** with prejudice.

### I.    BACKGROUND[2]

On or about May 19, 2021, at 8:50 p.m., Alexander was booked into the Amherst County Adult Detention Center. Dkt. 63-1 ¶ 1; 63-3. Upon his admission to the facility, Alexander

---

[1] Liability under § 1983 is "personal, based upon each defendant's own" conduct that violates another's constitutional rights. *Trulock v. Freeh*, 275 F.3d 391, 402 (4th Cir. 2001). Alexander's claims fail on other grounds and I thus find it unnecessary to address each named Defendant's liability on the individual claims.

[2] Both Alexander and Defendants incorporate by reference the allegations of facts contained in the First Memorandum in Support of Summary Judgment (Dkt. 63) and the Response to the First Motion for Summary Judgment (Dkt. 68). *See* Dkts. 86 at 2; 90 at 1. As such, I considered these filings in reviewing this motion. Moreover, Alexander's original Complaint (Dkt. 1), Amended Complaint (Dkt. 16), and Second Amended Complaint (Dkt. 75) were signed, sworn, and submitted under penalty of perjury and thus constitute verified complaints that are "equivalent of

complained to the medical staff of pain in his left shoulder and arm. Dkt. 63-1 ¶ 4. The following day at 2:24 a.m., Alexander was transported to a hospital where he received surgery to repair a fractured humerus. He also received treatment for an incomplete tear in his left rotator cuff. Dkt. 63-1 ¶ 4; 63-3. On May 21, 2021, Alexander returned to the Adult Detention Center and was housed in a medical pod. Dkts. 63-1 ¶ 5; 63-3.

    A.  <u>Alexander's recreational and exercise restrictions</u>

Alexander's fracture healed slowly, increasing his risk of further injury, discomfort, and medical complications. Dkt. 63-1 ¶ 5. To mitigate these risks, the medical staff restricted his recreation time out of his cell. *Id.* ¶ 6. Alexander states he was then denied recreation time for between 5-10 months and was refused physical exercise time outside of his cell. Dkts. 1 at 2; 16 at 4, 8; 75 at 2. Alexander filed a grievance regarding his limited recreation time and identified other inmates with medical conditions who were allowed daily access to the L-Unit recreational area "where they could watch T.V., socialize and go out onto the rec. yard." Dkt. 16 at 5. Major Schmitt responded to Alexander's grievance stating that "a decision [was] made by the medical dept. because of your injury. The other inmates['] situation is different than yours." *Id.*

On October 26, 2021, Alexander filed another grievance regarding his recreational restrictions and Major Schmitt replied that Nurse Stanley cleared Alexander "for rec-time on the rec yard by [himself]." *Id.* Thereafter, Alexander was allowed recreational time on the less desirable K-Unit rec-yard[3] while other medical unit inmates were allowed to go to the L-Unit

---

an opposing affidavit for summary judgment purposes, when the allegations contained therein are based on personal knowledge." *Goodman v. Diggs*, 986 F.3d 493, 498 (4th Cir. 2021) (quoting *Williams v. Griffin*, 952 F.2d 820, 823 (4th Cir. 1991)).
[3] Alexander described this yard as "the smallest rec-yard in the jail. I was locked outside with no access to a restroom." Dkt. 16 at 5.

rec-yard. *Id.* Around December 9, 2021, an Adult Detention Center doctor — who Alexander identifies as Dr. Linn — told Alexander that he had no restrictions on his recreation and "that wasn't something medical decided anyways." *Id.* at 6. For the following 5 days, Alexander was allowed to have recreation time on the L-Unit. *Id.*

At a medical appointment at OrthoVirginia on December 14, 2021, Alexander asked the escorting officers to allow him privacy to speak with his surgeon. Dkt. 16 at 7. One of those officers, Officer Habib, responded by berating him. *Id*. Upon returning to the Adult Detention Center, Alexander asked Major Schmitt that Officer Habib no longer be assigned to transport him for medical appointments and Major Schmitt responded that Alexander did not get to choose his assigned escorts. *Id.* A few hours later, Alexander was told that he could only have recreation time in the K-Unit rec-yard, not the L-Unit rec-yard. *Id*. Alexander filed another grievance claiming his recreation time was restricted in retaliation for asking to speak privately with his physician to protect his HIPPA rights. *Id*. Major Schmitt replied that Alexander "was approved for recreation time per Nurse Rodgers by yourself because of the medication you are on. It has nothing to do with punishment or retaliation." *Id*.

Between December 14, 2021, and January 3, 2022, Alexander was denied recreational time on numerous days causing him to file another complaint requesting that the facility ease the restrictions on his recreation time. *Id*. at 7. Major Schmitt replied that such restrictions would only be lifted with the consent of Nurse Rodgers. Dkt. 16 at 9. Corporal Harper also replied to Alexander stating that weather conditions hindered rec-yard access, and that facility staff would work on it. *Id*. at 9.

Alexander contends that he developed severe anxiety, depression, psychosis, suicidal ideation, and emotional trauma from isolation in his cell. *Id*. He further states that he "suffered muscular atrophy from being unable to walk or exercise." *Id*.

B. <u>Denial of Alexander's off-site physical therapy treatment</u>

On September 7, 2021, Alexander had an examination at OrthoVirginia for the incomplete tear to his left rotator cuff and was referred for twice-a-week pre-operation physical therapy at a location outside the Adult Detention Center. Dkts. 63-1 ¶ 8; 63-4. On September 24, 2021, OrthoVirginia prescribed Alexander a physical therapy regimen designed for independent performance during incarceration, referred to here as in-cell therapy. Dkts. 63-1 ¶ 8*;* 10; 63-5. The Adult Detention Center medical staff reviews and administers inmate medical treatments prescribed by external healthcare providers. Dkt. 63-1 ¶ 9. Adult Detention Center physician Dr. Quing Liu reviewed Alexander's physical therapy referral and concluded that the prescribed in-cell therapy was adequate to address Alexander's injury and that biweekly physical therapy sessions at the OrthoVirginia facility were unnecessary. *Id*. Alexander states that another inmate was transported to OrthoVirginia twice a week for treatment of a knee injury. Dkt. 16 at 11.

On October 18, 2021, Alexander filed a grievance claiming that the Adult Detention Center failed to transport him for prescribed physical therapy, when other inmates were allowed similar off-site treatment. Dkt. 63-8. Major Schmitt responded to Alexander's grievance, stating,

> While here, you fall under the care of the facility physician. He determines what your treatment is. I have spoken with Nurse Stanley and Ms. Rodgers about this. You are taken to the consultation to be given instructions and that is the only visit. This is the policy of the BRRJA. I do not comment on other inmates.

*Id*. at 2. Alexander appealed this response on November 16, 2024 contending,

> The Facility Physician did not turn down my Physical Therapy prescribed by my surgeon. Your Director of Nursing did. She does not have that authority. Hence

> why she will not answer and return my Request form. This is a direct attempt at cost cutting for the Facility. Even though my Medicaid has paid for all my treatment. Virginia Code § VAC 15-40-330 Statute Authority 53.1-5, 53.1-68, 53.1- [sic] state no restrictions shall be imposed on the Physician by the facility in the practice of medicine.

*Id*. at 1. He received a response from Lipscomb on November 18, 2021 which provided,

> The jail physician ordered you initial physical therapy visit. At the visit, you were given exercises that you could perform on your own. It is your responsibility to do those exercises. The jail physician decided that you did not need additional therapy than what you can do on your own. I consider this matter resolved.

*Id*.

On February 23, 2022, Alexander received a second operation on his arm after which he was again prescribed physical therapy. Dkt. 16 at 12. Alexander stated that at one point he "was told by Nurse Hayden that the Facility Doctor had 'signed off' on [his] Physical Therapy." *Id*. After not being transported to any off-site physical therapy appointments, Alexander filed another paper request and facility staff responded that the issue had been addressed. *Id.* On September 26, 2022, Alexander asked Major Schmitt to give him a copy of the policy that disallows off-site physical therapy. *Id*. at 12-13. Major Schmitt replied that he did not "share policies with inmates" and indicated that Alexander could subpoena them. *Id*.

C. Alexander's exposure to challenged cell conditions

Alexander filed this lawsuit on August 24, 2022. On August 29, 2022, Alexander delivered facility staff — one "Ms. Wade" — a "Prison Account Form" to allow the court to collect the filing fee. *Id*. at 15. On September 1, 2022, Alexander states that Officers Ferguson and Horsley transferred him to "a cell covered in human excrement, blood and vomit" and then moved him to a cell "without [a] toilet or running water" "for over 8 hours." Dkt. 16 at 15-16; 75 at 4. According to Alexander's cell assignment history, on September 1, 2022 at 2:48 p.m.,

Alexander was moved from an I-Cell to A Class II Cell 20. Dkt. 63-3. He remained in the A Class II Cell for approximately 8.5 hours, until 11:23 p.m. *Id.*; Dkt. 16 at 16. He was then moved to an I-Cell where he remained until September 2, 2022 at 2:43 p.m. and was thereafter relocated to A Class II Cell 13. Dkt. 63-3.

D. <u>Alexander's lack of access to the Law Library</u>

Alexander asserts that around the time his lawsuit became public knowledge, Officer Harden barred him from the Adult Correction Center law library which limited his ability to cite additional legal authorities in his court filings. Dkts. 16 at 17; 75 at 5.

## II. LEGAL STANDARD

Pursuant to Federal Rule of Civil Procedure 56(a), a court should grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In considering a summary judgment motion, a court views the record as a whole and draws all reasonable inferences in the light most favorable to the nonmoving party. *See, e.g., Celotex Corp. v. Catrett*, 477 U.S. 317, 322-24 (1986). Nonetheless, the nonmoving party may not rely on beliefs, conjecture, speculation, or conclusory allegations to defeat a summary judgment motion. *See Baber v. Hosp. Corp. of Am.*, 977 F.2d 872, 874–75 (4th Cir. 1992). The supplied supporting evidence must meet "the substantive evidentiary standard of proof that would apply at a trial on the merits." *Mitchell v. Data Gen. Corp.*, 12 F.3d 1310, 1315–16 (4th Cir. 1993); *see also Sakaria v. Trans World Airlines*, 8 F.3d 164, 171 (4th Cir. 1993) (finding that the district court properly disregarded inadmissible hearsay in an affidavit filed with a summary judgment motion).

In cases involving *pro se* plaintiffs, a federal court is instructed to liberally construe the pleadings to allow for the development of a potentially meritorious claim. *See, e.g.*, *Cruz v. Beto*, 405 U.S. 319 (1972). However, the liberal construction requirement does not allow a court to presume the existence of a genuine issue of material fact when none is presented. *See, e.g.*, *Weller v. Dep't of Soc. Servs.*, 901 F.2d 387 (4th Cir. 1990).

### III.   DISCUSSION

A § 1983 claim requires a plaintiff to prove that a person acting under the color of law deprived him or her of a right secured under federal law or the Constitution. 42 U.S.C. § 1983. Alexander's § 1983 complaint alleges deprivations under the First, Eighth, and Fourteenth Amendments.

A. <u>Eighth Amendment Claims Relating to Conditions of Confinement</u>

The Eighth Amendment prohibits the infliction of cruel and unusual punishment on criminal convicts. U.S. Const. amend. VIII. This prohibition applies to a prisoner's conditions of confinement. *See Porter v. Clarke*, 923 F.3d 348, 355 (4th Cir. 2019); *Shakka v. Smith*, 71 F.3d 162, 166 (4th Cir. 1995); *Helling v. McKinney,* 509 U.S. 25, 31 (1993)). Conditions of confinement include the physical state of a prisoner's environment, access to physical exercise, and the adequacy of prison medical care. *See, e.g.*, *Strickler v. Waters*, 989 F.2d 1375, 1379 (4th Cir. 1993); *Estelle v. Gamble,* 429 U.S. 97, 103 (1976). To challenge his conditions of confinement under the Eighth Amendment, Alexander must demonstrate (1) that "the deprivation of [a] basic human need was *objectively* 'sufficiently serious,' and (2) that *subjectively* 'the officials act[ed] with a sufficiently culpable state of mind." *De'Lonta v. Angelone*, 330 F.3d 630, 634 (4th Cir. 2003). In reviewing Eighth Amendment claims, "courts must consider the totality

of the circumstances." *Mitchell v. Rice*, 954 F.2d 187, 191 (4th Cir. 1992), cert. denied, 506 U.S. 905 (1992).

The objective "sufficiently serious" requirement in a conditions of confinement claim requires a prisoner to either "'produce evidence of a serious or significant physical or emotional injury resulting from the challenged conditions," or "demonstrate a substantial risk of such serious harm resulting from the prisoner's unwilling exposure to the challenged conditions.'" *Webb v. Deboo*, 423 F. App'x 299, 300 (4th Cir. 2011) (quoting *Shakka*, 71 F.3d at 166). Only extreme deprivations satisfy the objective component of an Eighth Amendment conditions of confinement claim. *See Hudson v. McMillian,* 503 U.S. 1, 8-9 (1992). However, this does not give prison officials leeway to disregard a dangerous confinement condition simply because an inmate does not immediately exhibit serious symptoms. *Helling*, 509 U.S. at 33–36 (holding that the determination of a "substantial risk" requires a court to assess whether ". . . [a prisoner demonstrates] that the risk of which he complains is not one that today's society chooses to tolerate.").

The subjective element of an Eighth Amendment confinement conditions claim "is satisfied by a showing of deliberate indifference by prison officials." *De'Lonta*, 330 F.3d at 634 (citing *Farmer v. Brennan,* 511 U.S. 825, 834 (1994)). "[D]eliberate indifference entails something more than mere negligence ... [but] is satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Farmer, 511 U.S.* at 835. Rather, "[i]t requires that a prison official know of and disregard the objectively serious condition, medical need, or risk of harm." *Shakka*, 71 F.3d at 166.

Here, Alexander makes three distinct challenges to his conditions of confinement, one regarding access to physical exercise, the second related to adverse cell conditions, and the third pertaining to receipt of inadequate medical treatment relating to the denial of physical therapy at OrthoVirginia.

1. Eighth Amendment violation for denial of physical exercise

Alexander contends that Defendants Trent, Lipscomb, Major Schmitt, Rodgers, and Corporal Harper violated his Eighth Amendment rights by knowingly denying him physical exercise time outside of his assigned cell for multiple months. Dkt. 75 at 2, 5. The Fourth Circuit recognizes that complete or near-complete deprivation of exercise without a penological justification violates the Eighth Amendment. *See Mitchell*, 954 F.2d at 192 (collecting cases); *Rivera v. Mathena*, No. 18-6615, 2019 WL 6133727, at *3 (4th Cir. Nov. 19, 2019). But "[a]llege[d] deprivations caused by ... limited exercise opportunities," without evidence that the inmate "sustained any serious or significant physical or emotional injury as a result of these conditions" is insufficient to survive summary judgment. *Strickler*, 989 F.2d at 1381; *see also Lyles v. Stirling*, 844 F. App'x 651, 653 (4th Cir. 2021).

Alexander claims that he was confined to a single cell and denied all out-of-cell recreational and exercise opportunities for at least 5 months[4] — May 22, 2021 through October 26. Dkt. 16 at 4-5. Moreover, he contends that he developed severe anxiety, depression, psychosis, suicidal ideation, and emotional trauma from isolation in his cell, as well as muscular

---

[4] Alexander's Second Amended Complaint does not indicate how long he was denied exercise and his allegations regarding the duration of time he was deprived of out-of-cell exercise vary across his original complaint and his First Amended Complaint. *See* Dkt. 1 at 2; 16 at 4-5. For purposes of this opinion, I rely on the timeline presented in the First Amended Complaint, as it provides the most comprehensive account of his access to recreation.

atrophy from lack of exercise. *Id*. at 9.  Construing the evidence in the light most favorable to Alexander, a genuine dispute of material fact exists as to whether this denial of out-of-cell exercise constitutes an objectively serious denial to support an Eighth Amendment claim.

Alexander, however, must also demonstrate that Defendants imposed the restrictions on his recreation time with "know[ledge] of and disregard [to] an objectively serious . . . risk of harm [to him]." *Rish v. Johnson*, 131 F.3d 1092, 1096 (4th Cir. 1997). Medical staff at the Adult Detention Center restricted Alexander's physical exercise, not out of neglect, but to prevent further injury. *See* Dkt. 63-1 ¶ 5. Alexander's grievances were thoroughly investigated and addressed, and starting in October 2021, he was allowed out-of-cell recreation time in various rec-yards during which he could exercise.[5] *See* Dkt. 16 at 5-8; 68 at 4. Defendants Trent, Lipscomb, Major Schmitt, Nurse Rodgers, and Corporal Harper did not act with deliberate indifference supporting an Eighth Amendment violation.

---

[5] Alexander claims that there were short periods of time after October 26, 2021, including one 5-day stretch, where he was unable to engage in out-of-cell recreation. Dkt. 16 at 7. However, these short periods are insufficient to support an Eighth Amendment violation. *See Dickerson v. Schmitt*, No. 7:23-CV-00068, 2023 WL 3726507, at *5 (W.D. Va. May 30, 2023)(finding that 10 days without out-of-cell exercise was not a sufficiently serious deprivation)*; contra Brown v. Lamanna*, 304 F. App'x 206, 208 (4th Cir. 2008)(unpublished) and *Rivera*, 795 F. App'x at 174 (finding two months without recreation may be sufficiently serious to support an Eighth Amendment claim). The remainder of Alexander's grievances centered upon being designated to recreate the K-Unit rec-yard, rather than his preferred L-Unit. This is insufficient to demonstrate cruel and unusual punishment. *See Gholson v. Murry*, 953 F. Supp. 709, 723 (E.D. Va. 1997)(finding that prisoner plaintiffs' Eighth Amendment claim failed since they did not present "any evidence suggesting that they cannot adequately exercise within the area provided. Thus, deprivation of a larger exercise area or of access to restrooms during the two-hour exercise period is not 'sufficiently serious'"); *see also Clay v. Miller,* 626 F.2d 345, 347 (4th Cir.1980); *Strickler*, 989 F.2d at 1382.

### 2. Alleged Eighth Amendment violation for cell conditions

Alexander alleges that on September 1, 2022, Officers Ferguson and Horsley violated the Eighth Amendment by "forcing [him] into a cell covered in human excrement, blood and vomit. [and] [t]hen [kept] me in a cell for over 8 hours without [a] toilet or running water." Dkts. 16 at 16 at 15-16; 63-3; 68 at 33; 75 at 2. To satisfy the objective component of an Eighth Amendment claim asserting adverse cell conditions, a plaintiff must demonstrate that he bears a substantial risk of harm arising from his exposure to the challenged conditions, *Helling*, 509 U.S at 35, or "produce evidence of a serious or significant physical or emotional injury resulting from the challenged conditions." *Strickler*, 989 F.2d at 1381.

Alexander's challenged cell conditions do not constitute a serious deprivation of a fundamental human need. "[C]ourts have found no constitutional violation in other cases involving similar time periods when the prisoner was allegedly exposed to unsanitary conditions." *See Harris v. FNU Connolly*, No. 5:14-CV-128-FDW, 2016 WL 676468, at *5 (W.D.N.C. Feb. 18, 2016), *aff'd*, 667 F. App'x 408 (4th Cir. 2016) (dismissing plaintiff's claim alleging he spent 45 days in [a] cell with "massive amount[s] of urine, feces, and vomit on both the floor and walls"); *Beveranti v. Smith*, 120 F.3d 500, 504–05 (4th Cir. 1997) (concluding that prisoners held in cells "smeared with human feces and urine" for six months did not state cognizable Eighth Amendment claims); *Arrington v. Collins*, No. 7:23-CV-00210, 2023 WL 7005828, at *2 (W.D. Va. Oct. 24, 2023); *Riddick v. Kiser*, No. 7:20cv00096, 2021 WL 4453667, at *8 (W.D. Va. Sept. 29, 2021) (concluding an inmate's Eighth Amendment rights were not violated where he was placed in a cell lacking running water for a period of time).

Alexander has not offered any evidence that he sustained any serious or significant injury from the challenged cell conditions. Alexander's unverified allegations that he suffered consequential PTSD, anxiety, and night terrors,[6] without supporting evidence, is inadequate to survive summary judgment. *See Gardner v. Beale*, 998 F.2d 1008 (4th Cir. 1993) (stating that an inmate's "contention that he was starving and suffered mental anguish is simply not enough" evidence to demonstrate that he sustained a serious or significant physical or emotional injury) (citing *Strickler*, 989 F.2d at 1379). Alexander thus fails to raise a genuine issue of material fact as to the objective prong of his Eighth Amendment physical conditions of confinement claim.

### 3. Constitutional violations for alleged denial of prescribed medical treatment

Alexander contends that Defendants Trent, Lipscomb, and Nurse Rodgers acted with deliberate indifference in denying prescribed bi-weekly physical therapy in violation of the Eighth Amendment. Dkts. 63-1 ¶ 8; 63-4. "Disagreements between an inmate and a physician over the inmate's proper medical care" only substantiate deliberate indifference under the Eighth Amendment in exceptional circumstances. *Wright v. Collins*, 766 F.2d 841, 849 (4th Cir. 1985) (citing *Gittlemacker v. Prasse*, 428 F.2d 1, 6 (3d Cir. 1970)). "[N]egligent medical diagnoses or treatment, without more, do not constitute deliberate indifference." *Webb v. Hamidullah*, 281 F. App'x 159, 166 (4th Cir. 2008) (citing *Sosebee v. Murphy,* 797 F.2d 179, 181 (4th Cir.1986)). Moreover, an "'error of judgment' on the part of prison medical staff or 'inadvertent failure to provide adequate medical care,' . . . does not constitute a constitutional deprivation redressable under § 1983." *Pers. v. Whited*, No. 7:20-CV-00146, 2022 WL 885097, at *2 (W.D. Va. Mar. 25,

---

[6] *See* Dkt. 90 at 2.

2022) (quoting *Boyce v. Alizaduh*, 595 F.2d 948, 953 (4th Cir. 1979), abrogated on other grounds by *Neitzke v. Williams*, 490 U.S. 319 (1989)).

Here, Defendants responded to both Alexander's grievance for denial of prescribed bi-weekly physical therapy and his appeal of that grievance. *See* Dkt. 63-8. They reviewed Alexander's complaint and consulted with facility medical staff on the matter. *Id*. Dr. Liu, not the named defendants, determined that Alexander's prescribed in-cell therapy exercise program was sufficient treatment and found off-site physical therapy appointments unnecessary. *Id*. Alexander was not denied his prescribed physical therapy in full, rather, his treatment consisted of in-cell therapy exercises at the Adult Detention Center. *See* Dkts. 63-1 ¶ 10; 63-5. Alexander disagrees with the medical decision of the facility physician, but such a disagreement does not establish a claim for deliberate indifference. *See, e.g. Wright*, 766 F.2d at 849; *Phoenix v. Amonette*, 95 F.4th 852, 859 (4th Cir. 2024); *Pers.*, 2022 WL 885097, at *1.

Furthermore, the Eighth Amendment requires prison officials to "respond reasonably to the risk" faced by an inmate once they are "aware of a serious medical need." *Hisxon v. Moran*, 1 F.th 297, 302 (4th Cir. 2021). Alexander received two physical therapy prescriptions. The prescription for therapy through OrthoVirginia classifies its "urgency" as "routine," not serious. Dkt. 63-4. He received a second prescription for in-cell therapy while at the Adult Detention Center. Providing Alexander the opportunity to complete physical therapy through an in-cell exercise program at the facility rather than at OrthoVirginia is not apparently unreasonable. Alexander offers no evidence that Defendants' denial of physical therapy at OrthoVirginia substantially risked that he would suffer "an objectively serious condition, medical need, or risk of harm." *Farmer,* 511 U.S. at 837. There is thus no genuine dispute of material fact sufficient for this claim to survive summary judgment.

B. <u>Constitutional violations for alleged denial of law library access</u>

Alexander contends that Officer Harden violated his Eighth Amendment[7] rights by denying him access to the Adult Detention Center law library which limited his ability to cite "Amendments, Codes, or violations" in support of his legal position. Dkt. 16 at 17; 75 at 5. The constitutional right of access to the courts requires prison authorities to provide inmates seeking to challenge post-conviction proceedings and civil rights actions with adequate law libraries and/or adequate assistance to persons trained in the law. *See Younger v. Gilmore*, 404 U.S. 15 (1971); *Bounds v. Smith*, 430 U.S. 817 (1977). There is, however, no "abstract, freestanding right to a law library or legal assistance." *Lewis v. Casey*, 518 U.S. 343, 351 (1996). To bring a constitutional claim for a facility's lack of legal research resources, a prisoner must demonstrate that these deficiencies caused him substantial harm. *Id.* at 363. It is insufficient to show that "an institution's library is inadequate or that access to that library is restricted." *Strickler*, 989 F.2d at 1385. Rather, a prisoner must demonstrate that "a nonfrivolous legal claim ha[s] been frustrated or ... impeded." *Lewis*, 518 U.S. at 353. Alexander only alleges that lack of access to the law library impeded his ability to provide additional supporting authorities in his filings. His law library access claim fails to demonstrate that he suffered a substantial harm and is thus insufficient to withstand summary judgment.

---

[7] Defendants interpret Alexander's allegations as "a First Amendment claim that Officer Harden allegedly interfered with his right of access to the courts." Dkt. 86 at 12. I agree with Defendants' interpretation and review Alexander's library access claim as one implicating his access to the courts.

C. <u>Retaliation for Grievances</u>

Alexander brings a § 1983 retaliation claim against Defendants Trent, Lipscomb, Major Schmitt, Officer Harden, Officer Ferguson, and Officer Horsley for restricting his recreational opportunities, denying him access to the law library, and relocating him to cells with adverse conditions allegedly in response to his filing of grievances and initiating these proceedings. *See* Dkts. 16 at 7-8, 16-17; 75 at 4-5.[8] A § 1983 retaliation claim requires: (1) the plaintiff engaged in an activity protected under the First Amendment; (2) the "defendant's allegedly retaliatory conduct would likely deter a person of ordinary firmness from the exercise of First Amendment rights"; and (3) plaintiff's protected activity and defendants' conduct are causally related. *Jones v. Solomon*, 90 F.4th 198, 213–14 (4th Cir. 2024). Filing grievances and initiation of this lawsuit clearly constitute First Amendment protected activity. *See Booker v. South Carolina Dep't of Corr.*, 855 F.3d 533, 541 (4th Cir. 2017). Thus, my analysis focuses on the second and third elements.

The second element is objective: a plaintiff must demonstrate that a defendant's actions were more than a mere inconvenience and rose to a level severe enough to dissuade a person of ordinary firmness from exercising their First Amendment rights. *See Constantine v. Rectors &*

---

[8] Specifically, Alexander's retaliation claims are: (1) Trent, Lipscomb, and Schmitt re-restricted his recreational opportunities hours after he filed a December 14, 2021 request that Officer Habib no longer be assigned to transport him to medical appointments (Dkt. 16 at 7-8); (2) Officer Harden denied Alexander access to the Adult Detention Center law library following his submitted the "Prison Account Form" related to this lawsuit (Dkt. 16 at 15, 17); and (3) Officers Ferguson and Horsley placed Alexander in cells with adverse confinement conditions on September 1, 2022 following his delivery of a "Prison Account Form" noticing these proceedings on August 29, 2022 (Dkt. 16 at 15-16).

*Visitors of George Mason Univ.*, 411 F.3d 474, 500 (4th Cir. 2005) (internal citations omitted). While a plaintiff's response to the alleged retaliation may provide some evidence of deterrence, it is not dispositive. *Id.*

To satisfy the third element, a plaintiff must present evidence that their First Amendment activity was a "but for cause of the adverse action alleged." *Ridpath v. Bd. of Governors Marshall Univ.*, 447 F.3d 292, 318 (4th Cir. 2006) (internal citations omitted). This requires evidence that a plaintiff's protected activity played a substantial or decisive role in the defendants' actions. *Martin v. Duffy*, 977 F.3d 294, 300 (4th Cir. 2020). "For a plaintiff to meet his *prima facie* burden of causation, he must show '(1) that the defendant[s were] aware of [his] engaging in protected activity" and (2) "some degree of temporal proximity to suggest a causal connection.'" *Shaw v. Foreman*, 59 F.4th 121, 130–31 (4th Cir. 2023) (*Constantine*, 411 F.3d at 501).

Ultimately, while courts should approach inmate retaliation claims with skepticism, they must also construe the record and all reasonable inferences in the plaintiff's favor when evaluating a summary judgment motion. *See Wall v. Stevens*, No. 7:16-CV-00373, 2018 WL 626359, at *6 (W.D. Va. Jan. 30, 2018).

Here, Alexander's retaliation claims lack factual evidence and are legally insufficient to survive summary judgment. The loss of library access — which prevented Alexander from *supplementing* the cases, laws, and policies already cited in his court filings — is nothing more than a "*de minimis* inconvenience" to the exercise of his First Amendment rights. *See Am. C.L. Union of Md., Inc.*, 999 F.2d at 786. Similarly, Alexander's alleged deprivation of out-of-cell recreation on "numerous days" between December 14, 2021 and January 3, 2022 is also insufficiently severe to dissuade a person of ordinary firmness from exercising their First

Amendment rights. *See Wall v. Clarke*, No. 7:19CV00260, 2023 WL 2703138, at *6 (W.D. Va. Mar. 29, 2023) (citing *Newmones v. Ransom*, No. 1:21-CV-00276, 2022 WL 4536296, at *5 (W.D. Pa. Sept. 29, 2022) and *Sears v. Mooney*, No. 1:17-cv-50, 2019 WL 6726839, at *8 (M.D. Pa. Dec. 11, 2019)) (finding that temporary recreation restrictions were not severe enough to constitute adverse actions).

Alexander also fails to establish a causal connection between his protected activities and his other alleged adverse actions. First, there are no facts indicating that Dr. Liu's decision to require Alexander to complete in-cell therapy rather than attending routine biweekly off-site therapy was in response to Alexander's filing of a grievance. Rather, Alexander filed complaints following Dr. Liu making this determination. As to his relocation to the unsanitary cells, the record shows Alexander filed this lawsuit on August 24, 2022, submitted a related "Prisoner Account Form" to Ms. Wade on August 29, 2022, and was transferred by Officers Ferguson and Horsley to an unsanitary cell on September 1, 2022. While these events are temporally proximate, Alexander provides no further evidence that the Officers were aware of his lawsuit when they relocated him, or that their actions were motivated by his protected conduct. Without such evidence, his averments remain speculative and conclusory and are insufficient to establish his retaliation claim. *See George v. Colley*, No. 7:23CV00014, 2023 WL 5095700, at *2 (W.D. Va. Aug. 9, 2023) (citing *Adams v. Rice*, 40 F.3d 72, 74 (4th Cir. 1994)).

D. <u>Fourteenth Amendment violations for alleged refusal of medical care and refusal of prescribed medical treatment</u>

Alexander claims the Defendants violated his Fourteenth Amendment rights by restricting his access to physical exercise and denying him off-site physical therapy. Defendants ask the Court to dismiss this case in full but fail to address Alexander's Fourteenth Amendment

claims in their Second Motion for Summary Judgement. Nevertheless, "district courts are widely acknowledged to possess the power to enter summary judgment *sua sponte,* so long as the losing party was on notice that she had to come forward with all of her evidence." *Jackson v. Iris.com*, 524 F. Supp. 2d 742, 747 (E.D. Va. 2007) (*quoting Celotex Corp.*, 477 U.S. at 326). Notice requires that the losing party be provided adequate opportunity to show the existence of a genuine dispute of material fact. *Id.*; *see also U.S. Dev. Corp.,* 873 F.2d at 735. On October 17, 2023, Alexander received a Roseboro Notice informing him that he would be allowed 21 days "to submit any further counter-affidavits or other relevant evidence contradicting, explaining or avoiding Defendant's evidence" in response to Defendants' second motion for summary judgment. Dkt. 87.

Alexander does not indicate whether his Fourteenth Amendment claims are brought on due process or equal protection grounds. "[I]f a constitutional claim is covered by a specific constitutional provision, such as the . . . Eighth Amendment, the claim must be analyzed under the standard appropriate to that specific provision, not under the rubric of substantive due process." *United States v. Lanier*, 520 U.S. 259, 272 (1997). Alexander's claims concerning exercise restrictions and denial of medical treatment are more appropriately addressed under the Eighth Amendment — as discussed in Section II.A. of this Opinion — and do not establish a Fourteenth Amendment due process violation. To the extent Alexander invokes the Equal Protection Clause, he fails to present any evidence that he was treated differently from similarly situated individuals due to intentional or purposeful discrimination. *See Morrison v. Garraghty*, 239 F.3d 648, 654 (4th Cir. 2001). He merely identifies other prisoners suffering from different injuries who allegedly received preferable recreational and medical accommodations. These assertions, without more, are insufficient to survive summary judgement.

## IV. CONCLUSION

For the foregoing reasons, I **GRANT** Defendant's Second Motion for Summary Judgment (Dkt. 85) and **DISMISS** Alexander's claims with prejudice.

It is so **ORDERED**.

Entered:  April 9, 2025

*Robert S. Ballou*

Robert S. Ballou
United States District Judge